UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WALLEY QUINONES,

                     Plaintiff,

        -against-

CITY OF NEW YORK; CO JOHN DOE,

                   Defendants.

16cv0985 (GBD) (DF)

**REPORT AND
RECOMMENDATION**

---

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

*Pro se* plaintiff Walley Quinones ("Plaintiff") brings this action under 42 U.S.C. § 1983, alleging that defendants City of New York (the "City") and a C.O. [correction officer] "John Doe" (collectively, "Defendants") violated his constitutional rights by depriving him of adequate medical care at Bellevue Hospital ("Bellevue"), while he was in the custody of the New York City Department of Correction ("DOC").

Currently before this Court for a report and recommendation is Defendants' motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 15.)[1] For the reasons set forth below, I recommend that Defendants' motion be denied.

---

[1] Even though the "John Doe" defendant has not yet been identified (*see* Dkt. 33 (Order, dated Dec. 29, 2016, requiring City to identify this individual)), the law firm of Heidell, Pittoni, Murphy & Bach, LLP, purports to bring this motion on behalf of this unidentified defendant, as well as on behalf of the City. (*See* Dkt. 15.)

## BACKGROUND

### A.    Factual Background

Liberally construed, Plaintiff's Complaint, dated February 8, 2016 ("Compl.") (Dkt. 1), as

supplemented by his submissions opposing the instant motion (Dkts. 24, 32),[2] allege the

following facts:

At all times relevant to Plaintiff's claims, Plaintiff was in custody on Rikers Island

("Rikers"), a New York City correction facility.  (*See* Compl., at 8 ¶ 1.)[3]  In October 2014,

Plaintiff underwent a laser lithotripsy procedure[4] (*id.*, at 11 ¶ 20), apparently at Bellevue.[5]  Then,

on November 15, 2014, Plaintiff underwent a follow-up procedure at Bellevue, to remove the

stent that was placed during the original procedure.  (*Id.*)  Plaintiff alleges that, as part of the

follow-up procedure, a doctor "inserted a long slender tool" into his urethra.  (*Id.* ¶ 23.)  The

---

[2] *See* Discussion, *infra*, at Section I(A), regarding the propriety of considering, on a motion to dismiss, allegations asserted in a *pro se* plaintiff's opposition papers.

[3] Plaintiff's Complaint has two sections:  a form Section-1983 Complaint, filled out by hand and dated February 8, 2016, followed by a more detailed, typed statement of a claim that bears a separate caption for the Civil Court of the City of New York and is dated February 5, 2016.  As discussed further below (*see* Discussion, *infra*, at Section II(C)), it appears that, rather than provide a full description of the facts and injuries that underlie his federal suit, Plaintiff has simply attached and referred to an earlier Civil Court claim.  In reviewing Plaintiff's factual allegations and summarizing them herein, this Court has considered the entirety of his Complaint, including the attached Civil Court pleading.  For ease of reference, citations herein to the Complaint and its attachment will refer to both the page number of the Docket entry and the identifying letter or number of the relevant paragraph contained on that page.

[4] This procedure involves using a laser, passed up through the urethra, to break up kidney stones, so that they may be eliminated.  During the procedure, a stent is placed in the ureter (which runs from the bladder to the kidney); that stent is then later removed.  *See* http://urology.osu.edu/22766.cfm (last accessed Jan. 3, 2017).

[5] Male detainees at Rikers are taken to Bellevue when they are in need of medical care that cannot be provided at Rikers.  *See* http://www.nyc.gov/html/doc/html/about/facilities-overview.shtml (stating that male inmates at Rikers who are "seriously ill" are held in a "prison ward[] that [DOC] operates in . . . Bellevue Hospital") (last accessed Jan. 3, 2017).

doctor then "became nervous" and could not remove the tool or the stent, causing Plaintiff to bleed and urinate "freely and excessively." (*Id.*, at 11 ¶ 23 – 12 ¶ 26.) Three doctors attempted to remove the tool without success. (*Id.*, at 12 ¶ 28.) This (which Plaintiff describes in his Civil Court claim (*see* n.3, *supra*) as "malpractice" (*id.* ¶ 31)[6]) caused Plaintiff to be in "extreme and excruciating pain" (*id.* ¶ 28).

The tool remained lodged in Plaintiff's urethra with approximately two inches protruding from the tip of his penis (requiring him to wear a diaper because he continued to bleed and urinate), until the following day, when he underwent surgery to have it removed. (*Id.* ¶¶ 29-31.) Plaintiff claims that this incident caused "severe and lasting injur[ies]," including chronic urethral pain, urinary problems, sexual dysfunction, mental anguish, and depression. (*Id.*, at 12 ¶ 32 – 13 ¶ 34.) Plaintiff also alleges that, after he returned (presumably to Rikers) after surgery, "the Jail gave [him] bad treatment for months." (*Id.*, at 3 ¶ II(D).)[7]

The crux of Plaintiff's constitutional claims is that the John Doe defendant, a correction officer stationed at Bellevue, prevented him from undergoing surgery immediately after experiencing complications from the attempted stent removal. Although, in the handwritten portion of his federal Complaint, Plaintiff at least alleges that this correction officer "stopped [him] from going back to surgery" (*Id.*, at 3 ¶ II(D) (characterizing this as "cruel and unusual punishment")), Plaintiff's allegations regarding the conduct of the officer are more fully spelled out in the papers he filed in opposition to Defendants' motion. Specifically, Plaintiff alleges in opposition that he heard a doctor inform the correction officer that the situation was an

---

[6] In an apparent typographical error, the Civil Court pleading contains two paragraphs numbered "31," which this Court will treat herein as a single paragraph.

[7] As discussed at n.15, *infra*, Plaintiff has provided no further elaboration as to this particular allegation, either in his Complaint or in any of his subsequent filings.

3

"emergency," but that the correction officer "did no[t] care" that surgery was needed on an emergency basis (Plaintiff's Opposition, dated Sept. 9, 2016 ("Pl. Opp") (Dkt. 24), at 1); rather, the correction officer said that he had to ask for "permi[ss]ion" for Plaintiff to have the required surgery (*id.*).  In sur-reply papers (filed with leave of Court), Plaintiff further alleges that this officer not only "stopped the doctors from doing [their] job," but that the officer "obviously knew what he was doing because the doctor [told] him they had to correct the problem immediately," and Plaintiff was "bleeding in that moment" and "scream[ing]for the pain that was something inhumane."  (Plaintiff's Sur-Reply, dated Dec. 16, 2016 ("Pl. Sur-Reply") (Dkt. 32), at 1.) Plaintiff asserts that it was the "inter[r]uption" in his care, resulting from the actions of the correction officer, that "cause[d] his injury."  (*Id.*)

Plaintiff also suggests, in his opposition papers, that, in denying him immediate surgery, the correction officer was acting pursuant to a City "policy" that permission had to be obtained before an individual in DOC custody could receive surgery, even in an emergency.  (Pl. Opp., at 1-2; *see also* Pl. Sur-Reply, at 2 ("When the [correction officer] stop[ped] the surgery he said they can't take me to surgery without permis[s]ion[,] so that's the City policy.").)  Plaintiff asserts that, as this policy apparently did not allow for the immediate treatment of DOC's inmates in medical emergencies, it was a "bad policy."  (Pl. Opp., at 1-2 (stating that the City had "no emergency process for emergency permi[ss]ion").)

### B.   **Defendants' Motion**

Defendants filed their motion to dismiss the Complaint on August 12, 2016 (*see* Notice of Motion, dated Aug. 12, 2016 (Dkt. 15)), supported by an attorney declaration (Declaration of Daniel May, Esq., in Support of Motion To Dismiss, dated Aug. 12, 2016 (Dkt. 16)), and a memorandum of law (Memorandum of Law in Support of Motion To Dismiss, dated Aug. 12,

2016 ("Def. Mem.") (Dkt. 17)).  In their motion, Defendants argue that the allegations contained in Plaintiff's Complaint are insufficient to state a federal, constitutional claim for deliberate indifference to serious medical needs, or for municipal liability.  (*See* Def. Mem., at 3-7.) Defendants further argue that, to the extent Plaintiff's Complaint may be construed to plead state-law claims for negligence or medical malpractice, such claims should be dismissed for lack of supplemental jurisdiction.  (*See id*., at 8.)

 Plaintiff filed his opposition on September 29, 2016.[8]  (Pl. Opp.)  In his opposition, as noted above, Plaintiff added certain allegations with respect to the conduct of the John Doe correction officer.  (*See id*.)  Plaintiff also added allegations, as set out above, regarding the regarding the nature of the City "policy" that purportedly caused the delay in his surgery.  (*Id*.)

 On October 28, 2016, Defendants filed a Reply Affirmation (Reply Affirmation of Tucker Kramer, Esq., dated Oct. 28, 2016 ("Def. Reply") (Dkt. 27)), urging the Court to disregard allegations raised by Plaintiff for the first time in his opposition papers (*see id*. ¶¶ 4-6), but, in any event, arguing that any such new allegations did not alter Defendants' basic argument that Plaintiff had failed to state a viable constitutional claim against either the John Doe correction officer or the City (*see id*. ¶¶ 7-22).

 On December 16, 2016, with permission from the Court (*see* Dkt. 31), Plaintiff made a final submission (Pl. Sur-Reply), responding to the arguments made by Defendants on reply.  In

---

[8] Although the Court's docket reflects a filing date of October 6, 2016 for Plaintiffs opposition, a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the Court.  *See Houston v. Lack,* 487 U.S. 266, 270 (1988).  Thus, in the absence of evidence to the contrary, the Court will deem the opposition to have been filed on September 29, 2016, the date Plaintiff signed it.  *See, e.g., Rhodes v. Senkowski,* 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).  Even with the benefit of that earlier filing date, Plaintiff's submission was untimely, but the Court accepted it nonetheless.  (*See* Dkt. 25 (Order, dated Oct. 18, 2016) ¶ 1 (finding good cause for late filing); *see also* Dkt. 23 (letter to the Court from Plaintiff, dated Sept. 30, 2016, explaining filing delay).)

addition to making the other points summarized above, Plaintiff notes, in his sur-reply, that he does not have an attorney and essentially apologizes for not having provided all of the factual bases for his claims in his initial Complaint.  (*See id.* ("I don't have [a] lawyer[,] so I don't know if I have to put all the information in one paper.  Sorry if I put the information in two papers[,] but [it] is all true.").)  Plaintiff also states that he does not understand Defendants' argument regarding the Court's lack of supplemental jurisdiction over any state-law claims (*see id.* ("I don't know what SUPPLEMENTAL JURISDICTION is")), and asks the Court for help (*id.*).

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Rule 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. (12)(b)(6).  In deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  The issue is not whether the plaintiff will ultimately prevail, but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on the evidence.  *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

Thus, the court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted).  At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337

(2d Cir. 2006) (citation omitted).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 666), *cert. denied*, 131 S. Ct. 901 (2011).

Additionally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases); *see also Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (noting that a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, . . . we remain obligated to construe a *pro se* complaint liberally."); *Lerman v. Bd. Of Educ.*, 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [a court] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency.").  This is especially true in the context of civil rights complaints.  *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001); *see also Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (noting that a court must be "mindful of the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations").

On a motion to dismiss a complaint, while a court is generally constrained to look only to the pleadings, *see* Fed. R. Civ. P. 12(b); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 492 (S.D.N.Y. 2003), "the mandate to read the papers of *pro se* litigants generously makes it

appropriate to consider plaintiff's additional materials, such as his opposition memorandum" to supplement the allegations in the complaint, *Burgess v. Goord*, No. 98cv2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan 26, 1999) (internal quotation marks and citations omitted); *see also, e.g.*, *Samuels v. Fischer*, 168 F. Supp. 3d 625, 645 n.11 (S.D.N.Y. 2016) (finding that, in resolving motion to dismiss, it was "appropriate to consider allegations contained in [p]laintiff's [o]pposition"); *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, No. 13cv2737 (GBD) (FM), 2014 WL 4061157, at *3 (S.D.N.Y. July 11, 2014) (amended report and recommendation) ("When a plaintiff is proceeding *pro se*, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims"), *adopted*, 2014 WL 3974584 (Aug. 13, 2014); *Sommersett v. City of New York,* No. 09cv5916 (LTS), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the [c]ourt, such as legal memoranda, the [c]ourt may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.").

Although courts have not followed this approach in every case, *see, e.g.*, *Brunson v. Duffy*, No. 12cv9465 (KBF), 2015 U.S. Dist. LEXIS 29015, at *4 (S.D.N.Y. Mar. 6, 2015) (citing *pro se* cases where courts declined to consider new facts included in opposition), it is certainly true that the papers submitted by a *pro se* plaintiff in opposition to a Rule 12(b)(6) motion may offer clarification or context that can aid the Court in understanding the plaintiff's pleading and in affording it a liberal construction, *see id.,* at n.4 (noting that "a district court needs to assess each case on an individual basis").  Especially in the civil rights context, where courts should act with particular care before dismissing a plaintiff's complaint, taking the step of examining a *pro se* plaintiff's opposition papers to see if they shed light on his initial allegations "is consistent with the principle that a court may not dismiss a *pro se* complaint unless it is beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief,"
*Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (internal quotation marks and
citation omitted).  Moreover, where the addition of allegations contained in opposition papers
would be sufficient to enable an otherwise deficient *pro se* pleading to survive a Rule 12(b)(6)
motion, a court may deem the pleading amended to include the additional allegations.  *See id.*

>    **B.**     **Deliberate-Indifference Claims**

A claim for violation of civil rights under 42 U.S.C. § 1983 must be predicated on
allegations that "state officials, acting under color of state law, deprived [the] plaintiff[] of a right
guaranteed [to him] by the Constitution."  *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995).
As relevant to this case, a prisoner may bring a Section 1983 claim against an officer who has
been deliberately indifferent to the prisoner's serious medical needs.  *See Chance*, 143 F.3d
at 702.  Where the plaintiff is incarcerated pursuant to a conviction, such a claim is grounded in
the Eighth Amendment's prohibition of "cruel and unusual punishment," *see Estelle v. Gamble*,
429 U.S. 97, 102-04 (1976), but, "[i]n the case of a person being held prior to trial," this
proscription "'does not apply,' because 'as a pre-trial detainee [the plaintiff is] not being
'punished,'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu,*
222 F.3d 99, 106 (2d Cir. 2000)).  Rather, where the plaintiff is in custody as a pretrial detainee, a
deliberate-indifference claim is grounded in the Due Process Clause of either the Fifth
Amendment (for a detainee in federal custody), or the 14th Amendment (for a detainee in state
custody).  *See id.*; *see also Mills v. Fenger*, 216 F. App'x 7, 10 (2d Cir. 2006) (noting that a claim
that state officers had unconstitutionally denied a plaintiff medical care should be evaluated under
the Due Process Clause of the 14th Amendment).  Either way – whether the alleged conduct
occurred after the plaintiff's conviction or before trial – the same standards apply to the court's

analysis of the claim. *See Caiozzo*, 581 F.3d at 70 (noting that, for a pre-trial detainee in state custody, "the standard for deliberate indifference is the same under the Due Process Clause of the Fourteenth Amendment as it is under the Eighth Amendment").[9]

Deliberate indifference to a prisoner's medical needs is evaluated under a two-pronged test, which is comprised of both objective and subjective components. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). To establish a constitutional violation, the plaintiff must show "(1) that the deprivation alleged [was] 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with the 'unnecessary and wanton infliction of pain.'" *Trammel v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). This dual standard "must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns." *Id.* at 163.

The first prong of the inquiry, or the "objective test," requires the "court to examine how the offending conduct [was] inadequate and what harm, if any, the inadequacy has caused or will likely cause" to the plaintiff. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citation omitted). Where a plaintiff claims a failure to provide medical treatment, he must first show that he had a medical condition that was "sufficiently serious," *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted), which generally means that he was suffering from "a condition of urgency," *Hill* , 657 F.3d at 122. Such a condition has been described as "one that

---

[9] It is unclear from Plaintiff's pleading whether, at the time of the alleged events, he was in custody at Rikers as a pretrial detainee, or had been convicted of a crime and was serving a sentence of incarceration. For the reasons set forth above, however, the distinction is ultimately immaterial to the Court's analysis of the sufficiency of his deliberate-indifference claims.

may produce death [or] degeneration," or that was causing the plaintiff "extreme pain." *Id.*

(internal quotation marks omitted; citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996));

*see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (a serious medical condition exists

where the failure to treat the prisoner's medical condition "'could result in further significant

injury or the unnecessary and wanton infliction of pain.'" (quoting *Chance*, 143 F.3d at 702)).

Although "there is no settled, precise metric to guide a court in its estimation of the seriousness of

a prisoner's medical condition," courts, in evaluating whether a plaintiff has satisfied the

objective prong of the deliberate-indifference test, have considered factors such as "(1) whether a

reasonable doctor or patient would [have] perceived the medical need in question as 'important

and worthy of comment or treatment,' (2) whether the medical condition significantly affect[ed]

daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*,

315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance*, 143 F.3d at 702 (2d Cir. 1998)).

　　　The second prong, or the "subjective test," requires a showing that the defendant official

acted with a "'sufficiently culpable state of mind'" in depriving the plaintiff of medical treatment.

*Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280).  This

requires that the official knew, or must have known, of the plaintiff's serious medical need and

disregarded it.  *Brock*, 315 F.3d at 162 (requiring showing that "a particular defendant 'knows of

and disregards an excessive risk to inmate health or safety'" (quoting *Farmer*, 511 U.S. at 837));

*accord Chance*, 143 F.3d at 702.  A defendant's knowledge of an excessive risk to the plaintiff's

health can be established through a showing that "the risk was obvious or otherwise must have

been known to [the] defendant." *Brock*, 315 F.3d at 164.  With respect to disregard, a plaintiff

must establish that the defendant acted with, at minimum, a *reckless* state of mind.  *Farmer*,

511 U.S. at 839-40 ("Deliberate indifference is a mental state equivalent to subjective

recklessness, as the term is used in criminal law"). Conduct involves the requisite recklessness when the defendant's "act or failure to act . . . evinces a conscious disregard of a substantial risk of serious harm." *Ramos v. Artuz*, No. 00cv0149 (LTS) (HBP), 2003 WL 342347, at *7 (S.D.N.Y. Feb. 14, 2003) (internal quotation marks and citation omitted). "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703 (citing *Estelle*, 429 U.S. at 105-06); *see also Vento v. Lord*, No. 96cv6169 (SS), 1997 WL 431140, at *3 (S.D.N.Y. July 31, 1997) ("It is well established . . . that allegations of negligence, medical malpractice or claims based on a difference of opinion over matters of medical judgment do not give rise to an Eighth Amendment violation.").

Accordingly, to state a claim for deliberate indifference to serious medical needs, a plaintiff must allege facts that plausibly support an inference that both of the above-described objective and subjective test are satisfied. *See Smith v. City of New York*, No. 15cv7910 (GHW), 2016 WL 7471334, at *3 (S.D.N.Y. Dec. 28, 2016) ("[I]n order to state a claim for deliberate indifference to serious medical needs, a plaintiff must allege that the defendant 'knew of and disregarded an excessive risk to [plaintiff's] health or safety and that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.'" (citations omitted)).

Moreover, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations marks and citation omitted); *accord Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987); *see also Fisk v. Letterman*, 401 F. Supp. 2d 362, 373-74 (S.D.N.Y. 2005) (dismissing the plaintiff's § 1983 claim where she failed to allege facts showing that the defendant had been

involved in the deprivation of her rights).  In other words, to recover from a particular defendant, the plaintiff must allege a tangible connection between that defendant's alleged unconstitutional acts and the injuries suffered.  *Gowins v. Greiner*, No. 01cv6933 (GEL), 2002 WL 1770772, at *6 (S.D.N.Y. July 31, 2002) (citing *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)); *Johnson v. Bendheim*, No. 00cv720 (JSR), 2001 WL 799569, at *5 (S.D.N.Y. July 13, 2001) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

### C.   Municipal Liability

The language of Section 1983 allows a civil cause of action for damages to be asserted against any "person" who, as set out above, acts under color of state law to deprive another person of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States]."  *See* 42 U.S.C. § 1983.  Under *Monell v. Dep't of Social Servs.*, 438 U.S. 658, 690-91 (1978), a municipality qualifies as a "person" under Section 1983, such that it may be subject to suit.  To state a claim under Section 1983 against a municipality, however, a plaintiff must allege that an official policy, custom, or practice of the municipality caused the deprivation of his federal constitutional or statutory rights.  *See Monell*, 438 U.S. at 694.  A municipality may not be held liable under Section 1983 solely because one of its employees violated a plaintiff's rights.  *See id.* Instead, for Section 1983 liability to attach, a plaintiff must plead and prove a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ("[A] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (citation omitted)).

At the pleading stage, a plaintiff "must allege facts tending to support, at least circumstantially, an inference that [the alleged] municipal policy or custom exists."  *Matthews v.*

*City of New York*, No. 15cv2311 (ALC), 2016 WL 5793414, at *9 (S.D.N.Y. Sept. 30, 2016)

(citations and internal quotation marks omitted).  Allegations regarding a single incident of

unconstitutional activity will generally be insufficient, "unless proof of the incident includes proof

it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to

a municipal policymaker."  *City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality

opinion).

## II.   <u>DEFENDANTS' MOTION TO DISMISS</u>

In their motion, Defendants argue that Plaintiff's Section 1983 claim against the individual

"John Doe" correction officer is facially insufficient because Plaintiff has failed to plead

allegations capable of satisfying either the objective or subjective prong of the deliberate-

indifference test.  (*See* Def. Mem., at 3-6.)  Defendants also argue that Plaintiff's claim against the

City for municipal liability should be dismissed for failure to plead that his alleged injuries were

caused by an unlawful "policy, custom, or practice."  (*See id*., at 6-8.)  Finally, Defendants argue

that, to the extent Plaintiff is seeking to assert state-law claims for negligence or medical

malpractice, the claims should be dismissed for lack of supplemental jurisdiction.  (*See id*., at 8.)

### A.   <u>Plaintiff's Claim Against the "John Doe" Correction Officer</u>

In their moving papers, Defendants frame their challenge to Plaintiff's claim against the

"John Doe" correction officer based solely on the allegations contained in Plaintiff's Complaint,

essentially asserting that the facts alleged by Plaintiff in his pleading are too minimal to support a

deliberate-indifference claim against that officer.

More specifically, Defendants argue that Plaintiff's Complaint is insufficient to plead the

requirements of the objective component of the deliberate-indifference test, as Plaintiff has not

alleged a sufficiently serious medical condition (*see* Def. Mem., at 4 (arguing that the Complaint

alleges only that Plaintiff suffered a "transient moment" of pain when the doctors at Bellevue attempted, but were unable, to remove the tool from his urethra)), or that his injury was in any way caused by the conduct of the John Doe officer (*see id.*, at 4-5 (noting that the Complaint contains no description of how the officer "contributed in any way to [Plaintiff's] pain or the alleged injury"; that, "[a]t the time the medical staff was attempting to remove the 'tool' from his urethra, the C.O. John Doe was not around"; and that "[w]hatever pain, if any, Plaintiff experienced when the attempt was made to remove the 'tool' . . . , such pain was not ascribed to any act or failure to act by the single named defendant 'John Doe'")).

As to the subjective component of deliberate indifference, Defendants further argue that Plaintiff's Complaint lacks allegations sufficient to suggest that the John Doe officer "acted or failed to act with a 'sufficiently culpable state of mind' – that is, culpable recklessness – with respect to Plaintiff's alleged injury."  (*Id.*, at 5.)  On this point, Defendants argue that Plaintiff has failed to plead that the officer had any "nefarious motive" in preventing Plaintiff from having immediate surgery (*id.*), or, indeed, that the officer acted, or failed to act, with any particular motive at all (*see id.* (describing Complaint as providing "no statement or explanation ascribing a motive to John Does' action")).  Defendants contend that nothing in Plaintiff's pleading describes "'medical mistreatment' involving 'culpable recklessness' or a 'conscious disregard of a substantial risk of serious harm.'"  (*Id.*, at 6.)

While Defendants' arguments have some force when viewed against Plaintiff's Complaint alone (absent Plaintiff's later allegations), even there the question is closer than Defendants suggest.  As set out above, a medical condition can be considered "sufficiently serious," and therefore satisfy the objective test under a deliberate-indifference claim, when it involves "extreme pain."  *Hill*, 657 F.3d at 122; *see, e.g.*, *Whittle v. Ulloa*, No. 15cv8875 (VB), 2016 WL

15

7351895, at *-4 (S.D.N.Y. Dec. 19, 2016) (denying motion to dismiss deliberate-indifference

claim where the plaintiff alleged that the defendant's deprivation of medical care caused him an

infection and swelling "so painful that it was difficult or impossible for [him] to sleep during the

three weeks he was not treated"); *Rivera v. Goord*, 119 F. Supp. 2d 327, 332, 337 (S.D.N.Y.

2000) (finding allegations of deprivation of pain medication for "severe," "unbearable," and

"great" pain associated with jaw disorder to be sufficient, at pleading stage).  In this case,

Plaintiff's Complaint plausibly alleges that Plaintiff was in "extreme and excruciating pain,"

following the doctors' failed attempt to remove a long tool and stent from his urethra.  (Compl.,

at 12 ¶ 23 – 13 ¶ 30).  Defendants' gloss on this allegation – that the pain must have been merely

"transient," lasting only while the medical procedure was underway and not afterwards – seems to

be based on Defendants' own assumptions, and is not grounded in the Complaint itself.

Moreover, the allegation in the Complaint that the John Doe officer stopped Plaintiff from having

immediate surgery to address the situation could plausibly be read to suggest that the officer's

conduct prolonged Plaintiff's extreme pain – thus, at a minimum, adding to his injury, regardless

of whether the officer had any role in producing the pain in the first instance.  *See, e.g.*, *Jones v.*

*Westchester Cty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 415 (S.D.N.Y. 2008) (finding it

plausible that prison officials' refusal to allow the plaintiff to undergo surgery "caused [the

plaintiff] to suffer, or at least exacerbated, a 'serious medical condition'"); *cf. Law v. Corizon*

*Med. Serv*., No. 13cv5286 (KBF), 2014 WL 2111675, at *4 (S.D.N.Y. May 9, 2014) (noting that,

where the basis of a plaintiff's deliberate-indifference claim is a "temporary delay or interruption

in the provision of otherwise adequate medical treatment, it is appropriate to focus on the

challenged delay or interruption in treatment rather than the prisoner's underlying medical

condition alone" (internal quotation marks and citation omitted)).[10]  Liberally construed,

Plaintiff's Complaint could also reasonably be read to suggest that, in "stop[ping]" Plaintiff from

having further treatment (Compl., at 3 ¶ II(D)), the John Doe officer consciously disregarded an

obvious risk that Plaintiff's extreme pain would continue unabated, thereby satisfying the

subjective prong of a deliberate-indifference claim.  *See Jones*, 557 F. Supp. 2d at 415-16.

 While sparse, these allegations, taken as true for purposes of the motion to dismiss, could

be read as sufficient to give rise to a plausible inference that the John Doe officer personally acted

in reckless disregard for an excessive risk to Plaintiff's health or safety.  *See Farmer*, 511 U.S. at

839-40; *Brock*, 315 F.3d at 162; *Chance*, 143 F.3d at 702.  In any event, even if insufficient to

state a Section 1983 claim against the officer, the content of Plaintiff's Complaint would at least

be sufficient to afford him leave to amend, as his allegations surely do not foreclose the

possibility that he could state such a claim.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.

2000) (holding that district courts "should not dismiss [a *pro se* complaint] without granting leave

---

[10] This Court notes that, in cases involving a delay in medical treatment, courts have often found short-term delays to be insufficient to rise to the requisite level of "seriousness."  *See, e.g.*, *DeMeo v. Koenigsmann*, No. 11cv7099 (HBP), 2015 WL 1283660, at *11 (S.D.N.Y. Mar. 20, 2015) (stating that, "[a]lthough a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years," although also noting that "[t]hese categories are not exclusive" (internal quotation marks and citations omitted)).  In this case, this Court acknowledges that, even under Plaintiff's own recounting of events, he received surgery to remove the tool and stent one day after the alleged unconstitutional conduct by the John Doe officer.  Nonetheless, it is this Court's view that even such a relatively brief delay in surgery could be "sufficiently serious," if a fact-finder were to conclude that the pain involved was evidently *so* extreme that leaving the plaintiff in such a state, even for a short time, represented a denial of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834; *see also Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003) (noting that the objective component of a deliberate-indifference claim is "necessarily contextual and fact-specific" and that "the serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner" (citations and internal quotations omitted)).

to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  Here, I recommend that the Court simply deem the Complaint amended to include the additional allegations described below, which are contained in Plaintiff's opposition and sur-reply submissions.  *See Johnson*, 234 F. Supp. 2d at 356 (deeming factual allegations contained in *pro se* plaintiff's briefs to supplement his pleading).  These additional allegations directly address each of the challenges to Plaintiff's claim against the John Doe officer that Defendants raise in their moving brief.

First, as to Defendants' argument that, as they read Plaintiff's pleading, the John Doe officer was not present during the supposedly "transient" moment when Plaintiff suffered "excruciating" pain, Plaintiff now clarifies that, in this suit, he is not merely alleging that he was in such pain during the medical procedure, but also that he was screaming in pain at the time that the officer prevented him from going back to surgery.  (Pl. Sur-Reply, at 1-2 ("the C.O. was there[,] [and] saw me and heard me").)  Second, as to Defendants' argument that the Complaint lacks any allegation of a causal nexus between the officer's conduct and Plaintiff's injury, Plaintiff now makes explicit that the injuries he is claiming in this case resulted from the interruption in his care (Pl. Sur-Reply, at 1) – a delay that was allegedly caused by the officer's refusal to let Plaintiff have immediate surgery (*see id.* (arguing that "[t]he City lawyer said that the doctor cause[d] my injuries and the C.O. did not at all and that [is] not true," as "the C.O. stop[ped] the doctors [from] doing the[ir] job[;] that inter[r]uption cause[d] my injury")).  Third, as to Defendants' argument that the Complaint lacks allegations sufficient to suggest that the officer acted with the requisite state of mind, Plaintiff now asserts that the officer not only observed his condition and heard his screams, but that Plaintiff overheard a doctor tell the officer

that the situation was an "emergency" (Pl. Opp., at 1) and that "they had to correct the problem immediately" (Pl. Sur-Reply, at 1).  Plaintiff alleges that the officer "did not care" that it was an emergency (Pl. Opp., at 1), even though Plaintiff was "bleeding in that moment" and "scream[ing] in pain" (Pl. Sur-Reply, at 1-2) due to a tool lodged in his urethra (Compl., at 11 ¶ 23), acting nonetheless to prevent Plaintiff from receiving immediate treatment.  By these allegations, Plaintiff makes explicit his contention that the John Doe officer acted knowingly in depriving him of necessary medical care.

Although Defendants have not had a chance to respond to Plaintiff's sur-reply (which, as noted above, was filed with leave of Court), Defendants have responded to Plaintiff's opposition, primarily by arguing that the Court should decline to consider Plaintiff's additional allegations (*see* Def. Reply ¶¶ 4-5).  Defendants also argue that certain allegations contained in the opposition should be disregarded as "wholly conclusory and unsupported by any alleged facts or evidence" (Def. Reply ¶¶ 11 (making this assertion regarding Plaintiff's allegation that his injuries were the "fault" of the officer), 13 (making same assertion regarding allegation that the officer "did not care" that Plaintiff was bleeding or that there was an emergency)).

At this pleading stage, however, Plaintiff need not support his allegations further, as long as they give fair notice of his claim and give rise to a plausible inference of a constitutional violation.  Here, the totality of Plaintiff's allegations, accepted as true with every reasonable inference drawn in Plaintiff's favor, plausibly suggest that the John Doe officer had reason to know of Plaintiff's severe pain and consciously disregarded it, depriving Plaintiff of immediate medical care in an emergency, and thereby wantonly inflicting additional pain.  Of particular note, Plaintiff's addition of the allegation that the officer was expressly informed by a doctor that immediate corrective surgery was needed, but that the officer ignored this, brings this case into

line with other cases where dismissal at the pleading stage has been denied.  *See, e.g.*, *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("[A] deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians."); *Whittle*, 2016 WL 7351895, at *4 (denying motion to dismiss deliberate-indifference claim where the plaintiff alleged that the defendant disregarded a doctor's instructions to change the plaintiff's bandages after surgery, causing him substantial pain and other adverse consequences); *Taylor v. Cherverko*, No. 15cv444 (VB), 2016 WL 29630, at *5-6 (S.D.N.Y. Jan. 4, 2016) (denying motion to dismiss deliberate-indifference claim where the defendants "deliberately ignore[d] the medical recommendations of [the plaintiff's] treating physicians" that he undergo knee surgery).

Regardless of whether Plaintiff can ultimately prove his allegations against the John Doe correction officer, they should be held sufficient to withstand a motion to dismiss under Rule 12(b)(6).  I therefore not only recommend that Plaintiff's Complaint be deemed to include the supplemental allegations described above, but also that Defendants' motion to dismiss Plaintiff's deliberate-indifference claim against the John Doe officer be denied.  *See, e.g.*, *Rivera*, 119 F. Supp. 2d at 337 (denying motion to dismiss where, "[a]t this early stage," court "[could] not say that plaintiff fails to allege 'sufficiently serious injury,' nor could the court reject his claim that defendants acted with a culpable state of mind in failing to treat his pain).

### B.   Plaintiff's Claim Against the City

With respect to Plaintiff's *Monell* claim against the City, Defendants again turn principally to the Complaint in their moving papers, arguing that, as pleaded, the Complaint fails to "specify, reference, or even allude to a policy, practice or custom causally connected to an alleged deprivation of his civil rights."  (Def. Mem., at 7.)  Defendants further argue that "Plaintiff has failed to articulate a reason why the John Doe correction officer decided to prevent him from

returning for surgery by delineating a policy, practice or custom the officer was obligated to follow."  (Def. Mem., at 7.)

If the Court were not to look beyond the Complaint, Defendants' argument here would be persuasive, as Plaintiff's pleading, standing alone, includes no suggestion that the John Doe officer, in preventing Plaintiff from receiving urgent care, was acting pursuant to a municipal "policy, practice or custom."  (*See generally* Compl.)  Once again, however, Plaintiff has sought to supplement his initial allegations by way of his opposition to Defendants' motion.  Of particular relevance to his *Monell* claim, Plaintiff has now added the allegation that, when stopping him from going to surgery, the John Doe correction officer stated that he "had to ask for permi[ss]ion."  (Pl. Opp., at 1.)  As, according to Plaintiff, the officer had been informed by a doctor that the situation was an emergency, Plaintiff deduces that the officer's comment must have meant that it would have been contrary to City policy for the officer to have allowed him to have surgery, *even in an emergency*, without first obtaining some form of official permission.  (*See id.*, at 1-2; *see also* Pl. Sur-Reply, at 2.)  Taken as a whole and liberally construed, Plaintiff's allegations suggest that, based on the officer's remark, the City had no separate protocol in place for dealing with emergencies that were too urgent to wait for a permission process, and that, in this way, the City's existing policy caused Plaintiff's unconstitutional deprivation of medical care.  (*See* Pl. Opp., at 2 (asserting that the City had "no emergency process").)[11]

_____

[11] Plaintiff thus appears to be asserting his *Monell* claim pursuant to the theory that there exists "a formal policy which is officially endorsed by the municipality" that caused his alleged constitutional deprivation, rather than pursuant to one of the other theories that may support a *Monell* claim, *i.e.*, "the existence . . . of a practice so persistent and widespread that it constitutes a custom or usage of which supervisory authorities must have been aware, [] that a municipal custom, policy, or usage can be inferred from evidence of deliberate indifference of supervisory officials to such abuses," *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015) (summary order), or that policymakers failed to "provide adequate training or supervision to subordinates to such an extent that [the failure] amounts to deliberate indifference," *Matthews*,

On reply, Defendants argue that Plaintiff's additional allegations are not enough to save his *Monell* claim.  Defendants contend that Plaintiff has offered "no proof a policy exists" (Def. Reply ¶ 19), and argue that "'bald allegations that such a thing existed'" is insufficient to satisfy his pleading burden (*id.* ¶ 17 (quoting *Bess v. City of New York*, No. 11cv7604, 2013 U.S. Dist. LEXIS 39765, at *3-4 (S.D.N.Y. Mar. 19, 2013)); *see also id* ¶ 19 (citing *Davis v. City of New York*, No. 07cv1395 (RPP), 2008 U.S. Dist. LEXIS 47869 (S.D.N.Y. June 19, 2008))).  Yet, as set out above, Plaintiff has now offered more than "bald allegations" regarding the existence of a policy.  He has not only described certain conduct of a correction officer, but he has coupled that with a description of a statement attributed to that officer, giving a reason for his conduct.  That statement, if credited, would tend to show that the officer's conduct was in conformance with a set of requirements that he felt constrained to follow.  While a single incident involving unlawful conduct by an officer may, by itself, be "insufficient to establish the affirmative link between [a claimed] municipal policy or custom and the alleged constitutional violation," *Brogdon v. City of New Rochell*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002), the officer's alleged statement here serves to tie his conduct to the claimed policy, *see, e.g.*, *Donohue v. Manetti*, No. 15cv636 (JFB) (GRB), 2016 WL 740439, at *6 (E.D.N.Y. Feb. 24, 2016) (denying motion to dismiss *Monell* claim where the plaintiff's allegations involved "two isolated incidents" of denial of medical care, but were coupled with allegations that corrections staff made comments suggesting that they denied the plaintiff medical care pursuant to a municipal policy to deny such care); *see also Tuttle*, 471 U.S. at 823-24 (noting that "[p]roof of a single incident of unconstitutional activity" may be sufficient to establish *Monell* liability where "proof of the incident includes proof it was

---

2016 WL 5793414, at *9.  Plaintiff has failed to allege any facts to support a *Monell* claim based upon the latter theories.

caused by an existing, unconstitutional municipal policy"); *Ricciuti v. N.Y.S. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The inference that a policy existed may [] be drawn from circumstantial proof").

Moreover, as noted in *Davis* (one of the cases on which Defendants themselves rely), the Supreme Court, in *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), made clear that no "heightened pleading standard" applies to Section 1983 claims alleging municipal liability, *see Davis*, 2008 U.S. Dist. LEXIS 47869, at *15 (citing *Leatherman*), and apparently rejected the pleading standard previously applied by the Second Circuit, that "the allegation of a single incident involving only actors below the policymaking level does not suffice to state a claim of municipal liability under Section 1983," *id.* at *16 (citations omitted).  As *Davis* points out, "[s]ince *Leatherman*, courts in this district have denied motions to dismiss complaints alleging that an individual officer's conduct conformed to official policy or custom."  *Id.* (collecting cases).  Here, although Plaintiff's allegations regarding the "policy" at issue are not well fleshed out, he has, in this Court's view, stated enough for the Court at least to allow limited discovery to go forward on the question of exactly what "permission," if any, the correction officer actually required before Plaintiff's surgery could proceed.  Such discovery would permit the Court to rule on Plaintiff's *Monell* claim on a more-developed record.[12]  *See Jones*, 557 F. Supp. 2d at 417.

---

[12] In other circumstances, this Court might have recommended granting Plaintiff leave to amend his pleading, to provide more details regarding the municipal policy under which he claims that his constitutional rights were violated.  After reviewing Plaintiff's opposition and sur-reply, however, this Court finds it doubtful that Plaintiff could add further detail regarding the claimed policy, absent discovery.  This Court also notes that it would seem that discovery on this issue could be narrowly tailored and would not be unduly burdensome.

I therefore recommend that Plaintiff's Complaint be deemed to include the allegations contained in Plaintiff's opposition and sur-reply, to the effect that the John Doe correction officer, in denying him immediate access to emergency surgery, was acting pursuant to a DOC "policy" that required the officer to obtain permission prior to allowing the surgery to go forward – a policy that served to delay emergency care.  Based on these allegations, I further recommend that Defendants' motion to dismiss Plaintiff's Section 1983 claim against the City be denied.

C.     **Supplemental Jurisdiction Over Potential State-Law Claims**

Should the Court deny Defendants' motion to dismiss Plaintiff's federal claims against the John Doe and/or against the City, there would be no reason for the Court to reach Defendants' final argument – that, in the absence of a viable federal claim, any claim that Plaintiff may be attempting to assert for negligence or medical malpractice, arising out of his medical care, should be dismissed for lack of supplemental jurisdiction.[13]  Nonetheless, this Court notes that this argument appears misplaced, as it does not appear to this Court that Plaintiff is actually attempting to assert such claims in this action.

While state-law negligence or malpractice claims would potentially lie against the medical staff who treated Plaintiff at Bellevue, or against the public benefit corporation that operates Bellevue as a facility,[14] Plaintiff has named no such defendants in this action.  Moreover, based

---

[13] As noted above, Plaintiff has stated that he does not understand the meaning of the term "supplemental jurisdiction."  (Pl. Sur-Reply, at 2.)  Simply put, although this Court, as a *federal* court, would not have original jurisdiction to hear Plaintiff's *state-law* claims (such as claims based on the New York state law of negligence or malpractice), the Court would nonetheless be able to hear those claims through an exercise of so-called "supplemental jurisdiction," provided (1) Plaintiff has adequately pleaded *federal* claims, (2) there is a sufficient relationship between those federal claims and Plaintiff's state-law claims, and (3) there is no other reason weighing against the exercise of supplemental jurisdiction.  *See* 28 U.S.C. § 1367.

[14] Bellevue was previously operated by the New York City Health & Hospitals Corporation ("HHC"), now known as NYC Health + Hospitals ("Health + Hospitals"), a public benefit corporation created by New York State law; it is not a City agency, but rather is a

on (a) the fact that Plaintiff attached a "Civil Court" claim to his pleading in this Court (*see* n.3, *supra*), and (b) Defendants' representation that Plaintiff previously filed a Civil Court action (*see* Def. Mem., at 4 n.2), it appears that Plaintiff has separately raised his state-law claims in another forum (*see also* Compl., at 9 ¶ 3 (stating, in attached Civil Court claim, that Plaintiff has filed and served upon the City a Notice of Claim, "pursuant to General Municipal Law Section § 50-e"); *id.* ¶ 8 (stating, in attached Civil Court claim, that Plaintiff's claim is for "negligence and malpractice")). In contrast, it appears that Plaintiff's federal case, in which he has named the John Doe correction officer as a defendant, is focused on allegedly unconstitutional conduct by actors *other than* the medical professionals,[15] against whom he may have any negligence or malpractice claim.

Based on this Court's understanding that Plaintiff did not intend to assert negligence or medical-malpractice claims in this Section 1983 case, there is no need for the Court even to consider exercising supplemental jurisdiction over such state-law claims, regardless of whether Plaintiff's federal claims can withstand scrutiny. For this reason, as well as the reasons stated

---

separate, suable entity. *See* N.Y. Unconsol. Laws §§ 7384(1), 7385(1); *cf.* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.").

[15] As noted above, Plaintiff not only references the conduct of the John Doe correction officer in the handwritten portion of his federal Complaint, but also alleges: "Then the jail gave me bad treatment for months." (Compl., at 3 ¶ II(D).) Plaintiff has pleaded no facts whatsoever to support this allegation, but it is not the basis of Defendants' motion to dismiss, and thus Plaintiff may have seen no need to augment this allegation in opposition to Plaintiff's motion, the way he did with respect to his claims regarding the John Doe. As Plaintiff's single, vague allegation regarding the "treatment" he received in jail after his surgery is patently insufficient to state a claim, I recommend that it be dismissed *sua sponte*, with leave to amend.

above regarding the viability of Plaintiff's federal claims, I recommend that the Court not reach

any issue of supplemental jurisdiction.[16]

## **CONCLUSION**

For all of the foregoing reasons, I respectfully recommend the following:

(1)     that Plaintiff's Complaint be deemed amended to include the supplemental allegations contained in his opposition and sur-reply submissions;

(2)     that Defendants' motion to dismiss Plaintiff's deliberate-indifference claims (as so amended) against both the John Doe correction officer and the City (Dkt. 15) be denied, to the extent such claims arise out of the John Doe officer's alleged conduct in preventing Plaintiff from receiving emergency surgery immediately following the complications that arose from the medical procedure performed at Bellevue on November 15, 2014;

(3)     that any claim that Plaintiff has attempted to assert against the City regarding any treatment he received in "jail" in the months following November 15, 2014 be dismissed by the Court *sua sponte*, with leave to replead; and

(4)     that, if Plaintiff wishes to assert any pendent state-law claims in this case, including claims for negligence and/or medical malpractice, against any of the medical professionals who treated him at Bellevue and/or against NYC Health + Hospitals, then he be given leave to replead, so as to clarify this and to join such defendants in the action.

With respect to any potential amendment of the Complaint that the Court may permit

Plaintiff to file in accordance with (3) and/or (4), above, I further recommend that Plaintiff be

instructed that his amended complaint must meet requirements of Rule 15(c) of the Federal Rules

of Civil Procedure, such that:

---

[16] If this Court has misunderstood Plaintiff's intention regarding any state-law claims (in other words, if Plaintiff *does* wish to assert, in this case, negligence or medical-malpractice claims against the doctors who performed the procedures on him at Bellevue, and/or against Health + Hospitals, which operates Bellevue), then he should be granted leave to amend, so as to make this clear and to join the doctors and/or Health + Hospitals as defendants on such claims.

In the statement of claim, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. If possible, Plaintiff should also provide the addresses for any named defendants. Further, to the greatest extent possible, Plaintiff's amended complaint must:

(a)     give the names and titles of all relevant persons;

(b)     describe all relevant events, stating the facts that support Plaintiff's case, including what each defendant did or failed to do;

(c)     give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

(d)     give the location where each relevant event occurred;

(e)     describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

(f)     state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief.  As any amended complaint will completely replace, not supplement, Plaintiff's original Complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse,

500 Pearl Street, Room 1310, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBEJCTIONS AND WILL PRECULDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Plaintiff does not have access to cases cited herein that are reported only on Westlaw or LexisNexis, he may request copies from Defendants' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities that are unpublished or reported exclusively on computerized databases that are] cited in a decision of the Court and were not previously cited by any party").

Dated:  New York, New York
        January 6, 2017

                                        Respectfully submitted,


                                        DEBRA FREEMAN
                                        United States Magistrate Judge


28

<u>Copies to</u>:

The Hon. George B. Daniels, U.S.D.J.

Mr. Wally Quinones
159 Suydan St. Apt. #3R
Brooklyn, NY 11221

Defense counsel (via ECF)